UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMINA BOUARFA,

    Plaintiff,

v.                                            Case No: 8:22-cv-224-WFJ-AEP

ALEJANDRO N. MAYORKAS,
*Secretary, U.S. Department
of Homeland Security*;
UR M. JADDOU,
*Director, U.S. Citizenship
and Immigration Services*,

    Defendants.
_____/

**ORDER**

    Plaintiff Amina Bouarfa filed an I-130 visa petition on behalf of her husband, Ala'a Hamayel. The United States Citizen and Immigration Services ("USCIS") initially granted the petition without taking into account a previous finding that Mr. Hamayel had entered into a sham marriage, making him ineligible for a future visa pursuant to § 204(c) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1154(c). Once USCIS discovered the error, it revoked Plaintiff Bouarfa's visa petition and explained that it never should have granted the petition in the first place. After an unsuccessful appeal to the Board of Immigration Appeals, Plaintiff filed the instant case to challenge the revocation.

Before the Court today is a Motion to Dismiss filed by Defendants Alejandro N. Mayorkas—the Secretary of the Department of Homeland Security—and Ur M. Jaddou—the Director of USCIS. Dkt. 8. Defendants argue this Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because the revocation was a discretionary agency decision not subject to judicial review. *Id.* Plaintiff filed a response. Dkt. 11.

After careful review of the record and relevant case law, the Court concludes that it lacks subject matter jurisdiction over this dispute. Defendants' Motion to Dismiss is granted.

## BACKGROUND

Plaintiff Bouarfa is a United States citizen married to Ala'a Hamayel ("Mr. Hamayel"), a citizen of the Palestinian Authority. Dkt. 1 ¶¶ 1, 11. Plaintiff Bouarfa and Mr. Hamayel share two children, who are both citizens of the United States. Dkt. 11 at 2.

Mr. Hamayel was married twice before. He first married Ms. Adriana Munoz in March 2007—days after Ms. Munoz's naturalization ceremony to become a United States citizen. Dkt 1-4 at 4; Dkt. 11 at 2. Ms. Munoz filed a Form I-130 Petition for Alien Relative[1] ("I-130 petition") seeking a spousal visa for Mr.

---

[1] "An I-130 beneficiary-petition allows a U.S. citizen to have a qualifying [noncitizen] relative classified as an 'immediate relative' under the [the Immigration and Nationality Act] so that the [noncitizen] relative may then file an application to adjust their immigration status." *Williams v.*

2

Hamayel. Dkt. 11 at 2. USCIS conducted interviews with Mr. Hamayel and Ms. Munoz to determine whether their marriage was bona fide. *Id.* at 2–3. At the end of an interview, Ms. Munoz signed a sworn statement withdrawing her support for the Form I-130. *Id.* at 3. She stated her marriage to Mr. Hamayel was fraudulent and that she asked him for $5,000 before filing the visa petition on his behalf. Dkt. 1-4 at 4. Defendants accordingly denied Ms. Munoz's Form I-130 petition and initiated deportation proceedings against Mr. Hamayel. Dkt. 11 at 3.

A week later, Ms. Munoz submitted a second Form I-130 petition on Mr. Hamayel's behalf. *Id.* Ms. Munoz attempted to retract her previous admission that her marriage with Mr. Hamayel was fraudulent, saying she made those statements while under duress. *Id.* at 4; Dkt. 1-4 at 4. Nevertheless, Ms. Munoz and Mr. Hamayel divorced soon after, resulting in the denial of Ms. Munoz's second Form I-130 petition. Dkt. 11 at 4.

Just over a year later, in May 2008, Mr. Hamayel married his second wife, Clare Farmer. *Id*. Like Ms. Munoz, Ms. Farmer submitted a Form I-130 petition on Mr. Hamayel's behalf. *Id.* But the couple soon began experiencing marital discord, and they divorced. *Id.* at 4–5. USCIS accordingly denied Ms. Farmer's Form I-130 petition. *Id.* at 5.

---

*Sec'y, U.S. Dep't of Homeland Sec.*, 741 F.3d 1228, 1230 (11th Cir. 2014) (citing 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1)).

Plaintiff Bouarfa and Mr. Hamayel married in February 2011. *Id*. About three years later, Plaintiff filed a Form I-130 petition seeking a spousal visa for Mr. Hamayel. Dkt. 1 ¶ 12. Defendant USCIS approved the Form I-130 petition on January 6, 2015. *Id.* at ¶ 13; Dkt. 8 at 3. However, on March 1, 2017, USCIS issued a Notice of Intent to Revoke ("NOIR") its approval of the visa petition. Dkt. 1 ¶ 14; Dkt. 8 at 3. USCIS stated it never should have approved Plaintiff Bouarfa's I-130 petition in the first place because there was substantial and probative evidence that Mr. Hamayel entered his first marriage for the purpose of evading immigration laws. Dkt. 1 ¶ 15. USCIS based this determination on Ms. Munoz's sworn statements that her marriage to Mr. Hamayel was fraudulent and that she asked him for $5,000 to file a Form I-130 petition on his behalf. *Id.*

Plaintiff timely responded to the NOIR, arguing that her husband's previous marriage to Ms. Munoz was bona fide. Dkt. 11 at 5. She attached documentary evidence to support this argument, including Ms. Munoz's later statements that she was under duress when she said her marriage was fraudulent. *Id.* at 5–6.

Defendants officially revoked the approval of Plaintiff's Form I-130 petition on June 7, 2017. Dkt. 1 ¶ 17. Defendants concluded that Ms. Munoz's statements about duress were unpersuasive and failed to undermine the probative value of her initial sworn statement that the marriage was fraudulent. *Id.* Defendants concluded

that Mr. Hamayel's marriage to Ms. Munoz was a "sham" and that Plaintiff's Form I-130 petition had been approved in error. *Id.*

Plaintiff timely appealed the revocation to the Board of Immigration Appeals (the "Board"). *Id.* ¶ 18. The Board dismissed the appeal on December 1, 2021, pursuant to a written opinion. *Id.* ¶ 19; Dkt. 1-4. The Board based its decision on Ms. Munoz's statements that the marriage was fraudulent, saying these statements were more persuasive than her later attempt to retract them. Dkt. 1-4 at 4.

Plaintiff filed the instant case seeking judicial review of Defendants' revocation of its prior acceptance of Plaintiff's Form I-130 petition. Dkt. 1. Plaintiff argues this revocation violated the Administrative Procedure Act, 5 U.S.C. § 706, because the administrative record lacked substantial and probative evidence that Mr. Hamayel fraudulently entered his prior marriage with Ms. Munoz to evade immigration laws. Dkt. 1 ¶ 24. Defendants now move to dismiss the case for lack of subject matter jurisdiction. Dkt. 8.

## LEGAL STANDARDS

### I.   Subject Matter Jurisdiction

A party may bring a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Thompson v. McHugh*, 388 F. App'x 870, 872

(11th Cir. 2010). A Rule 12(b)(1) motion to dismiss may facially or factually challenge a plaintiff's complaint for lack of subject matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack requires the court to determine if the plaintiff has sufficiently advanced a basis for subject matter jurisdiction. *Id*. Conversely, a factual attack challenges the existence of subject matter jurisdiction in fact, regardless of the basis that the plaintiff has alleged in the complaint. *Id*. When considering a factual attack, the court may consider matters outside the pleadings. *Id*.

## II.   I-130 Petition

The INA establishes the process through which a United States citizen may bring an alien who is a close relative, such as a spouse, to reside lawfully in the United States. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154. To do so, the United States citizen must file an I-130 petition on the alien relative's behalf requesting that USCIS formally recognize the relationship and classify the alien as an "immediate relative." 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1). The petitioner bears the burden of proving the validity of the claimed relationship by a preponderance of the evidence. 8 C.F.R. §§ 204.1(f), 204.2(a)(2); *Matter of Pazandeh*, 19 I. & N. Dec. 884, 887 (BIA 1989).

The INA prohibits USCIS from approving an I-130 petition if the beneficiary has at any time entered a marriage for the purpose of evading immigration laws:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c); *see Diaz v. U.S. Citizenship & Immigr. Servs.*, 499 F. App'x 853, 856 (11th Cir. 2012) ("Even if the current marriage is unquestionably bona fide, the visa petition cannot be approved if the beneficiary has previously had an I-130 petition filed on his behalf that was based on a fraudulent marriage."). The USCIS must determine whether there is "substantial and probative evidence" of such a fraudulent marriage. *See* 8 C.F.R. § 204.2(a)(1)(ii); *Matter of Samsen*, 15 I. & N. Dec. 28, 29 (BIA 1974).

## ANALYSIS

### I. This Court Lacks Subject Matter Jurisdiction To Review § 1155 Revocation Decisions.

Courts ordinarily have jurisdiction under the Administrative Procedure Act ("APA") to review final decisions made by federal administrative agencies. *See* 5 U.S.C. § 704. However, the APA expressly blocks such jurisdiction where

7

"statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *see also Perez v. U.S. Bureau of Citizenship and Immigr. Servs.*, 774 F.3d 960, 965 (11th Cir. 2014).

The INA contains one such jurisdiction-stripping provision, which states:

> [N]o court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter *to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Thus, the central inquiry in an INA jurisdiction analysis is whether the agency's decision was discretionary or nondiscretionary. If the decision is discretionary, then § 1252(a)(2)(B)(ii) bars judicial review of the decision. But if the decision is nondiscretionary, then courts have subject matter jurisdiction to review the decision under the APA.

Here, USCIS revoked Plaintiff Bouarfa's visa petition approval pursuant to 8 U.S.C. § 1155, which reads:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title.

The Eleventh Circuit has previously held that the Secretary's decision to revoke a visa petition under § 1155 qualifies as a discretionary act. *Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419–20 (11th Cir. 2009); *Karpeeva v. U.S. Dep't of Homeland Sec.*, 432 F. App'x 919, 925 (11th Cir. 2011). As such, the

8

INA's jurisdiction-stripping provision precludes judicial review of visa revocation decisions made pursuant to § 1155. *Sands*, 308 F. App'x at 419−20; *Karpeeva*, 432 F. App'x at 925. Most other federal appellate courts have held the same, highlighting § 1155's use of discretionary language like "may," "at any time," and "deems to be good and sufficient cause."[2]

According to Defendants, this ends the analysis in this case. Dkt. 8 at 6. USCIS revoked Plaintiff Bouarfa's visa petition pursuant to § 1155, which—under the Eleventh Circuit's holdings in *Sands* and *Karpeeva*—is a discretionary decision insulated from judicial review. This Court would therefore lack subject matter jurisdiction over Plaintiff Bouarfa's dispute.

But § 1155 is not the only relevant provision here. In its letter explaining why it revoked Plaintiff Bouarfa's visa petition, USCIS clearly stated that it based its revocation on § 1154(c). Dkt. 1-4 at 4 ("The visa petition was approved in error because the approval is prohibited under . . . 8 U.S.C. § 1154(c).").

As set forth above, § 1154(c) states:

> Notwithstanding the provisions of subsection (b), *no petition shall be approved if* (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of

---

[2] *See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 482 (1st Cir.), cert. denied, 579 U.S. 917 (2016); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 200–05 (3d Cir. 2006); *Mehanna v. U.S. Citizenship & Immigr. Servs.*, 677 F.3d 312, 314–15 (6th Cir. 2012); *Green v. Napolitano*, 627 F.3d 1341, 1344–46 (10th Cir. 2010); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Ghanem v. Upchurch*, 481 F.3d 222, 223–24 (5th Cir. 2007); *El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004). *But see ANA Int'l, Inc. v. Way*, 393 F.3d 886, 894–95 (9th Cir. 2004).

> a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

(emphasis added). Unlike § 1155, this section does not contain discretion-indicating language. Quite the opposite. Section 1154(c) contains the word "shall"—a word used by Congress to indicate an intent to "impose discretionless obligations." *Lopez v. Davis*, 531 U.S. 230, 241 (2001). As such, USCIS is *required* to deny an I-130 visa petition if it determines the alien previously entered a fraudulent marriage in order to evade immigration laws. *See Rojas v. Sec'y, Dep't of Homeland Sec.*, 675 F. App'x 950, 953 (11th Cir. 2017) (stating that "federal law *prohibits* the USCIS from approving a visa petition" when the alien previously entered a sham marriage) (emphasis added); *see also Velez-Duenas v. Swacina*, 875 F. Supp. 2d 1372, 1377–78 (S.D. Fla. 2012) (stating that § 1154(c) "*requires* USCIS to deny an I-130 visa petition" under such circumstances) (emphasis added).

This case is therefore complicated by the fact that USCIS first approved Plaintiff Bouarfa's visa petition but later revoked that approval. Had USCIS denied Plaintiff's visa petition in the first instance—as mandated by § 1154(c)—that

10

denial would have been subject to judicial review.³ *See, e.g.*, *Rojas*, 675 F. App'x at 953–55 (evaluating whether USCIS violated the APA when it outright denied I-130 visa petition based on prior finding of sham marriage). But because USCIS made a mistake by initially approving the petition, its later revocation of the approval becomes insulated from judicial scrutiny.

The Court is troubled by the potential implications of this framework. What should be a reviewable mandatory denial under § 1154(c) has morphed into an unreviewable discretionary decision under § 1155. Theoretically, USCIS could evade judicial review by granting a visa petition it should have denied outright and then immediately revoking its approval. Visa applicants could become stuck in perpetual cycles of unresolved, unreviewable petitions. Their only avenue for judicial review would be filing yet another I-130 petition and hoping USCIS outright denies it this time. Such a framework creates a loophole through which agencies could dodge judicial review by collapsing the distinction between nondiscretionary/reviewable determinations and discretionary/unreviewable determinations.

---

³ Plaintiff Bouarfa argues her case is akin to *Pelletz v. Dep't of Homeland Sec.*, No. 8:20-cv-200-MSS-JSS, 2022 WL 1619541 (M.D. Fla. Mar. 7, 2022). But *Pelletz* dealt with an outright *denial* of a Form I-130 petition. Plaintiff Bouarfa seeks judicial review of USCIS's decision to *revoke* its initial approval of her Form I-130 petition. The distinction between outright denials and revocations is crucial to the subject matter jurisdiction analysis because they are governed by different statutes that contain different discretion-indicating language.

This would flout Congress's clear grant of subject matter jurisdiction over decisions to deny petitioners' visas because of marriage fraud. *See* § 1154(c) (using the word "shall" to denote discretion-less obligation). It also conflicts with the U.S. Supreme Court's instructions to read the INA's jurisdiction-stripping provisions narrowly—in accord with the "traditional understandings . . . that executive determinations generally are subject to judicial review." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). Indeed, looming over this inquiry is a strong presumption in favor of judicial review. *Id.* at 251–52.

Several courts have begun to raise similar concerns. In *Jomaa v. United States*, 940 F.3d 291, 296 (6th Cir. 2019), the Sixth Circuit held that the revocation of a formerly approved I-130 visa petition is *not* a discretionary act, thereby giving courts the judicial authority to review such cases. Nondiscretionary decisions, the Sixth Circuit held, "are within our purview, even where they underlie determinations that are ultimately discretionary." *Id*. at 296 (citing *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 379 (6th Cir. 2017)). Thus, the court had subject matter jurisdiction to review the § 1154(c) sham marriage determination (a nondiscretionary inquiry), even though that determination underlay the § 1155 revocation (a discretionary inquiry). The Sixth Circuit came to this conclusion despite its prior precedents broadly stating that "the Secretary's decision to revoke a visa petition under section 1155 is an act of discretion that Congress has removed

from our review." *Mehanna v. U.S. Citizenship & Immigr. Servs.*, 677 F.3d 312, 315 (6th Cir. 2012).

The Eleventh Circuit has not yet squarely addressed this issue, thereby leaving *Sands* and *Karpeeva* as the leading precedent in this circuit. These cases plainly state that revocation decisions under § 1155 are discretionary and therefore not subject to judicial review. *See Karpeeva*, 432 F. App'x at 925 ("Given the statutory discretion conferred upon the Secretary to revoke approved visa petitions, we agree with the other circuits that have concluded that § 1252(a)(2)(B) precludes judicial review of visa revocation decisions made pursuant to § 1155."). The Eleventh Circuit's broad language does not account for different bases underlying USCIS's revocation decisions—all revocations under § 1155 are discretionary and unreviewable regardless of whether a nondiscretionary determination underlies the decision. This Court is bound to follow precedent as it stands today. *See Vargas v. Lynch*, 214 F. Supp. 3d 388, 393–96 (E.D. Pa. 2016) (raising concerns about the § 1155/§ 1154(c) framework but nevertheless holding the court lacked subject matter jurisdiction based on current Third Circuit precedent). The Court does not have subject matter jurisdiction over this dispute.

## II. Plaintiff's Remaining Arguments Are Unavailing.

Recognizing the negative impact of *Sands* and *Karpeeva* on her case,[4] Plaintiff Bouarfa argues she is not seeking judicial review of the revocation *per se*, but rather the Defendants' application of a legal standard—namely, whether there was "substantial and probative" evidence in the record showing that Mr. Hamayel previously entered a sham marriage. Dkt. 11 at 9–10. According to Plaintiff, this Court has subject matter jurisdiction to review the legal determination underlying the revocation decision, even though the Court does not have subject matter jurisdiction to review the revocation decision itself. *Id.*

The Court disagrees. Plaintiff Bouarfa seeks a backdoor judicial review of an unreviewable agency decision. She requests relief that would ordinarily be afforded under the APA: a judicial finding that there was not substantial and probative evidence showing Mr. Hamayel previously entered a sham marriage. *See Rojas*, 675 F. App'x at 953 (stating that the APA allows courts to set aside USCIS's finding of a sham marriage when it is "unsupported by substantial evidence"). But, as previously explained, this Court lacks subject matter jurisdiction to review whether USCIS violated the APA when revoking approval of an I-130 petition pursuant to § 1155. Although Plaintiff attempts to distinguish the

---

[4] Plaintiff Bouarfa "concedes that the Secretary's decision to revoke the approval of a visa is barred from judicial review." Dkt. 11 at 9.

14

basis of the revocation decision from the revocation decision itself, the relief she seeks betrays that there is no true difference between the two. Dkt. 1 at 8 ("Plaintiff requests that this Court . . . [d]eclare Defendants [sic] actions in the proceedings below as arbitrary and capricious, an abuse of discretion and not in accordance with law pursuant to 5 U.S.C. § 706(2)."). Courts have rejected similar attempts to recharacterize a sham marriage determination as a reviewable legal question in § 1155 revocation cases. *See Schamens v. Sessions*, No. 17–4926, 2018 WL 2164497, at *4 (D. Minn. May 10, 2018) (rejecting argument that the determination of whether a marriage was entered into in good faith is a predicate legal question that is subject to judicial review despite the § 1155 revocation not being reviewable); *Wang v. Johnson*, No. 15–CV–358, 2015 WL 4932214, at *4 (E.D. Pa. Aug. 18, 2015) (same).

In sum, USCIS's decision to revoke Plaintiff's I-130 petition approval constitutes a discretionary decision that is not subject to judicial review. Plaintiff cannot recharacterize the revocation as a reviewable legal inquiry. Because the Court does not have subject matter jurisdiction over the dispute, Plaintiff's claims must be dismissed.

## CONCLUSION

Defendants' Motion to Dismiss, Dkt. 8, is **GRANTED** for lack of subject matter jurisdiction. The clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on June 8, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record